## In re CROOK et al.

(District Court, W. D. Washington, N. D. January 14, 1915.)

No. 5351.

1. COURTS ⬪366—EXEMPTIONS—CONSTRUCTION OF STATE LAWS.
   In a bankruptcy proceeding, the federal court is concluded by the construction of state exemption laws by the state court of last resort.
   [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. ⬪366.]

2. EXEMPTIONS ⬪52—SELECTION IN LIEU OF EXEMPT PROPERTY—"OTHER PROPERTY."
   Though "other property," in Rem. & Bal. Code Wash. § 563, subd. 4, exempting from execution and attachment to each householder two cows with their calves, etc., and providing that, in case such householder shall not possess or desire to retain such animals, he may select from his property and retain other property not exceeding $250 in value, has been construed by the Supreme Court of the state as not including money, a debtor may select, in lieu of the animals specified, any other personal property other than money; the rule of ejusdem generis having no application.
   [Ed. Note.—For other cases, see Exemptions, Cent. Dig. § 40; Dec. Dig. ⬪52.
   For other definitions, see Words and Phrases, First and Second Series, Other.]

---

**3.** EXEMPTIONS ☞4—STATUTORY PROVISIONS—LIBERAL CONSTRUCTION.

Courts have no power to add to or take from exemption statutes, but such statutes must be liberally construed with a view of effectuating the object of the lawmakers.

[Ed. Note.—For other cases, see Exemptions, Cent. Dig. § 4; Dec. Dig. ☞4.]

**4.** STATUTES ☞205—CONSTRUCTION—MEANING OF LANGUAGE USED.

Words or phrases used in a statute are not to be taken separately, but are to be considered in relation to the entire statute, under the general meaning applied to the main purpose.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 282; Dec. Dig. ☞205.]

**5.** EXEMPTIONS ☞52—STATUTORY PROVISIONS—SELECTIONS IN LIEU OF PROPERTY MENTIONED.

Even though the maxim, "Noscitur a sociis," applies to Rem. & Bal. Code Wash. § 563, subd. 4, exempting from execution and attachment certain animals, and providing that, if the householder shall not possess or desire to retain such animals, he may select from his property and retain other property not exceeding $250 in value, any property possessed by a debtor, described or referred to in that section, may be selected in lieu of such animals, though not described or referred to in subdivision 4.

[Ed. Note.—For other cases, see Exemptions, Cent. Dig. § 40; Dec. Dig. ☞52.]

In Bankruptcy. In the matter of J. H. Crook, doing business as the J. H. Crook Electric Company, bankrupt. On exceptions to report of the referee. Referee's decision reversed.

G. D. Eveland, of Everett, Wash., for bankrupt.
Louis A. Merrick, of Everett, Wash., for trustee.

NETERER, District Judge. This is an application on the part of bankrupt to set aside, as exempt, personal property, other than money, of the value of not to exceed $250, in lieu of the animals provided in subdivision 4 of section 563, Rem. & Bal. Annot. Codes and Statutes of Washington. It is admitted that the bankrupt is the head of a family and is entitled, under said section, to exercise the right of exemption; that, at the time of filing his petition in bankruptcy and schedules, he did not have the animals specified in subdivision 4, supra, and did have the personal property selected, and did at that time, in writing, in conformity to the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544 [Comp. St. 1913, § 9585 et seq.]), express a desire to select such personal property.

[1, 2] The referee denied the right of the bankrupt to select the property selected in lieu of the animals, for the reason that the Supreme Court of Washington, in Creditors' Collection Association, Appellant, v. Frank E. Bisbee et al., Respondents (Wash.) 141 Pac. 886, filed July 7, 1914, held that the words "other property" could refer only to property of a like nature. This court, in the absence of a construction of the exemption statute by the Supreme Court of the state of Washington in Re Swanson (D. C.) 213 Fed. 353, filed May 5, 1914, held that selection could be made of other property not to exceed $250 coin in value, where the bankrupt did not possess, or did

not desire to select, the animals named in subdivision 4, supra, and that money would come under the term "other property." The Supreme Court of Washington, in Creditors' Collection Ass'n v. Bisbee, supra, based its conclusion upon Carter v. Davis, 6 Wash. 327, 33 Pac. 833; In re Gerber, 186 Fed. 693, 108 C. C. A. 511; In re Scheier (D. C.) 188 Fed. 744; and Ballard v. Waller, 52 N. C. 84. These cases were all considered in Re Swanson, supra, and the decision of the state court does not change my personal view; and being concluded upon the question of the construction of a state statute by the decision of the state court of last resort (St. Louis Southwestern Ry. Co. v. State of Arkansas, 235 U. S. 350, 35 Sup. Ct. 99, 59 L. Ed. ——, U. S. Supreme Court decision, filed December 7, 1914), and the issue being of such vital concern in the administration of bankruptcy estates, and the first impression being so radically opposite to what I believe the law to be, I have carefully examined the opinion and the cases upon which it is predicated, and am convinced that the only thing the court desired to say was that money cannot be selected in lieu of the animals named in the statute.

The portion of the statute in question, reads:

There shall be exempt, "to each householder, two cows, with their calves, five swine, two stands of bees, thirty-six domestic fowls, and provisions and fuel for the comfortable maintenance of such * * * animals for six months: Provided, that in case such householder shall not possess or shall not desire to retain the animals above named, he may select from his property and retain other property not to exceed two hundred and fifty dollars, coin, in value."

The state Supreme Court says:

"The words 'other property' * * * can refer only to other property of a like nature to that specially mentioned, under a well-known rule of statutory construction. To hold that money falls within the phrase 'other property' is to do violence to the rule of ejusdem generis."

And then discusses generally the relation of this provision to all property, and further says that the court held in Carter v. Davis, supra:

" 'It was sought to base the exemption right as a lieu exemption upon subdivision 3 of section 563, exempting to each householder certain enumerated animals and 'other household goods, utensils, and furniture, not exceeding $500 coin in value.' This contention was denied; the court holding that no right was conferred upon the debtor to retain other property of a different character in lieu of that authorized to be retained as exempt."

The court confuses subdivision 3 and subdivision 4, supra. Subdivision 3 provides:

"To each householder, one bed and bedding, and one additional bed and bedding for each additional member of the family, and other household goods and utensils and furniture not exceeding $500.00, coin, in value."

The additional selection under this subdivision must be made from other household goods, utensils, and furniture, and clearly there is no provision of statute whereby a person could claim as exempt certain enumerated animals in lieu of household goods, etc. Subdivision 4, supra, provides for the selection of other property in lieu of the animals named, but does not require it to be of a like character, but

simply provides, in general terms, that where the party does not possess the cows with their calves and the five swine, or, having them, does not care to retain them, he may select from his other property and retain property, in lieu of the animals, not exceeding $250 coin in value, and in this selection he may take household goods, utensils, and furniture, if he should happen to possess them, because there is no limitation to the provision, but he could not, under the provisions of subdivision 3, select the animals in lieu of household goods, because this subdivision limits the selection to other household goods, etc.

The state court quotes the Circuit Court of Appeals in Re Gerber, supra, in support of its contention. The Circuit Court of Appeals made some reference to a quotation from the Carter Case, but did not decide the issue here presented. On page 700 of 186 Fed., on page 518 of 108 C. C. A., the court said:

"The rules and forms prescribed by the Supreme Court under and by virtue of the Bankruptcy Act have the force and effect of law, and it therefore seems to us, to result necessarily that the bankrupt here, even though it should be conceded that he was not limited to the species of property specified in the statute of Washington, as hereinbefore indicated, lost any right he may have had to the exemptions claimed, by his failure to make the claim * * * within the time legally prescribed therefor."

No consideration was given to the provisions of subdivision 4, supra, as distinguished from subdivision 3, supra; nor does it appear that the courts' attention was called to these provisions. It does appear, however, that only a general reference was made to the Carter Case, which, as will be shown, did not determine, or attempt to determine, the matter.

In the Carter Case, Davis, acting under the direction of certain writs of attachment against the property of Carter, levied upon and took into his possession certain described live stock, consisting of horses, mules and cattle, together with other property. Afterwards a portion of the property was sold and two horses were sold for $165, and also all of the live stock, except one cow and two calves, which were claimed and received by the respondent at the time of the sale, for which he received more than $250. Afterwards, on January 19, 1892, Mrs. Carter, "acting for her husband and in his absence," duly and regularly claimed of the appellant, as exempt from attachment and sale as being community property of the respondent and the said R. P. Carter, certain household goods and furniture not involved in the litigation and not exceeding $150 in value, and also $250 in coin, the proceeds of the sale of live stock selected in lieu of the exemptions provided for in subdivision 4 of section 486 of the Code of Civil Procedure, and also the sum of $165, proceeds derived from the sale of the horses and other property. The court said:

"It will be observed that it does not appear that the respondent was a householder residing in this state at the time of the levy of the attachment, and, as such, entitled to the benefits of the exemption law. Nor does it appear that she intends to carry on the business of farming in the absence of her husband. But it does appear that, in claiming the property in question as exempt, she was acting for R. P. Carter in his absence. Now, conceding that R. P. Carter was a householder at the time of the levy, and it

appearing that his family consisted of his wife, the respondent, only, he had a right as such householder, if entitled to any exemption whatever, to retain one bed and bedding, and other household goods and utensils and furniture, such as he might select, but not exceeding $500 coin in value. Code Procedure, § 486, subd. 3. The respondent, as his representative, selected the 'bed and bedding' and certain other household goods, utensils, and furniture, not exceeding $150 in value, none of which was levied upon by the appellant, and then demanded of appellant, in lieu of other property of like character which was not selected, and perhaps not even possessed by her husband, $250, the proceeds of the sale of the live stock above mentioned, none of which was claimed to be exempt at all, and also the sum of $165, the proceeds derived from the sale of the two horses. * * * The claim to this $250, in the hands of the sheriff, is manifestly unfounded in law. The section of the statute referred to authorizes the selection of 'other household goods, utensils and furniture,' and prescribes the method and by whom such property may be selected, but confers no right to retain or select other property of a different character, in lieu of that authorized to be selected and retained. But it is claimed by the appellant that in no event can the judgment in this action be sustained, for the reason that the Legislature has expressly provided that the property of a person who has left the state with intent to defraud his creditors shall not be exempt from execution or attachment. Code Civil Procedure, § 489. Such being the law, the judgment must be reversed, irrespective of other considerations, unless the respondent has shown that she has some right or interest in the property claimed on behalf of her husband, beyond that which could be asserted by him, and we are unable to perceive that she has done so. The husband himself could only claim the property in controversy as a householder and a farmer, but, having absconded, he lost all right of exemption in either capacity. And what the husband could not do the respondent could not do for him, as his agent or representative. His rights can in no way be enlarged by the mere fact that the statute permits his wife to select as exempt, in his absence, such property as he might select if personally present."

Nowhere in the discussion of the issue in the Carter Case by the court was subdivision 4, supra, referred to, nor was its effect considered in the court's conclusion.

The state court further says:

"In the Scheier Case, Judge Rudkin, in considering this same provision, holds that, if the bankrupt is not possessed of the animals specifically mentioned, he is not entitled to retain from his assets other property of the value of $250 in lieu thereof."

The court has misconceived the issue in the Scheier Case. The only matter in issue in that case was whether a partner could claim exemptions from the partnership property, and Judge Rudkin said:

"In Charleson v. McGraw, 3 Wash. T. 344 [17 Pac. 883], the Supreme Court of the territory held that a partner could not claim exemptions from partnership property under similar facts. * * * How far the decision of the Supreme Court of the territory is binding on this court may admit of question. * * * The construction placed upon a statute by the highest court within the jurisdiction of the law-making body becomes a part of the statute, and, if the Legislature cannot add to the exemptions without impairing the obligation of existing contracts, certainly no court should accomplish the same results by a mere change in its decisions. However, if I should disregard the decision of the Supreme Court of the territory entirely, the overwhelming weight of judicial authority would lead me to the same conclusion."

Again:

"The fact that the other partner has consented to the allowance of the exemption does not change the rule."

And further said on page 746 of 188 Fed.:

"The second question certified must be answered in the negative for the same reason, and for the additional reason that the statute does not permit the debtor to select other property in lieu of provisions and fuel for his family and feed for the animals therein named."

The only issue was whether a person could claim, as exempt, partnership funds, and the further reference that à person cannot select other property in lieu of "provisions and fuel for his family and food for the animals therein named," and no statute appears anywhere authorizing a person to select, in lieu of provisions and fuel for his family and food for the animals named, other property.

The state court further says on page 888 of 141 Pac.:

"The North Carolina case (Ballard v. Waller), considering a like provision, says, 'The enumeration of particular articles, one cow and calf,' etc., concluding with the words 'and such other property,' by an established rule of construction restricts it to other property of a like kind."

An examination of the case and the language of the statute discloses an intention to restrict the property to a like kind. No such language is employed by the Washington statute, except in relation to household goods. The debtor may retain other property under the Washington statute from his property, not from such other property, nor from like property, clearly referring to all properties of which the bankrupt may be possessed and from which selections may be made.

The state court further says:

"The case of McLarty v. Tibbs, 69 Miss. 357, 12 South. 557, in applying this rule to an exemption statute, says: 'This is so palpably plain as to require no argument.'"

A glance at the decision of the Mississippi court shows it is not germane to the issue before the Washington state court. The court says (Woods, Judge):

"Tibbs, the defendant, is a laborer, over the age of 21 years, unmarried, and not the head of a family. Are his wages as such laborer, to the amount of $100, exempt from garnishment or other legal process? Unless we are to disregard the structure of the statute (paragraph 8, § 1224, Code 1880), and all rules of legal and grammatical interpretation, the exemption referred to is conferred upon heads of families only. The first and third paragraphs of the section create the exemptions peculiar to mechanics and laborers. Paragraph 8 creates an additional exemption, in pursuance of the general policy of our laws for the protection of families, in favor of all heads of families, regardless of the calling of such heads. The exemption sought by the appellee is found, not only in the paragraph conferring exemptions upon the heads of families, but in the very sentence so conferring such exemptions. By every rule of grammatical construction, the exemption is limited to the heads of families; and by that simple rule of legal interpretation, the general words, 'every laborer or mechanic,' following the particular words, 'each head of a family,' are to be referred to and controlled by such first used particular words; and the true reading will therefore be, 'The wages of every laborer or mechanic who is the head of a family, to the amount of one hundred dollars, shall be exempt,' etc. But this view is so palpably plain as to require no argument."

None of the cases cited by the Washington court lead to a solution of the issue here.

The Washington statute provides for exemptions from real property and from personal property, two general classes into which property is divided by all modern writers. Exemption of property in lieu of property specifically exempted from either class, "real" or "personal," must be taken from that class, unless further limited, in which case it must be taken from the property to which it is limited. No distinction is made in the Washington statute with relation to any classes of personal property. Webster defines "property" to be "the exclusive right of possessing, enjoying, and disposing of a thing; ownership; an estate, whether lands, goods or money." The rule of ejusdem generis, contended for by the trustee and as discussed by the state court cannot be invoked. The provisions of the statute are plain, and it seems to me there can be no doubt as to the legislative intent. A reading of subdivision 3, supra, where the additional exemption of household goods is allowed to the amount of $500 in value, but in which the selection is limited to "other household goods," etc., and subdivision 4, supra, where "he may select from his property and retain other property," than the animals, without any limitation, would seem to be conclusive that the selection can be made from any other property within that class, which is personal property, and which does include money. The Legislature, in the adoption of the exemption statute, dealt with limitations. It limited the provisions of subdivision 3, but did not limit the provisions of subdivision 4, which, to me, is conclusive that no limitation was intended.

[3] From a consideration of this statute in the light and purpose controlling such enactments, which is to prevent a householder and his family from being deprived of the immediate means of subsistence, in connection with the fact that the welfare of the unfortunate is the special object of the law's concern in the adoption of exemption statutes, and the further fact that these statutes have, from the earliest period of judicial determination in the territorial and state courts of Washington, been liberally construed with a view of effectuating the object of the lawmakers, it would seem that the conclusion is inevitable that the debtor may select from his chattel property other property than the animals referred to, without limitation. Courts have no power to add to or take from exemption statutes. Justice Allyn, for the court, in Mikkleson v. Parker, 3 Wash. T. 527, 19 Pac. 31, in a consideration of the personal property exemption statute, said:

"It is a firmly established principle that exemption laws must be liberally construed in favor of the poor debtor. They are based upon sound principles of justice and mercy. The right thus given must not be forfeited, unless exact justice demands it."

Judge Hoyt, in Dennis v. Kass & Co., 11 Wash. 353, 39 Pac. 656, 48 Am. St. Rep. 880, said:

"Exemption statutes should receive a liberal construction, and the aim of courts should be to see that those entitled to the benefits thereof receive the same."

In Puget Sound Dressed Beef & Packing Co. v. Jeffs, 11 Wash. 466, 39 Pac. 962, 27 L. R. A. 808, 48 Am. St. Rep. 885:

"Statutes exempting real property from sale on execution have received a liberal construction by nearly all the courts of this country. * * * And if

statutes exempting real property should be so construed, there is no good reason why those exempting personal property should not receive a liberal construction. * * * And a very great majority of the courts of this country now liberally construe all exemption statutes without regard to the property to which they relate. Such courts say that such statutes are remedial and should receive such a construction as to give effect to the intention of the Legislature."

In Becher v. Shaw, 44 Wash. 166, 87 Pac. 71, 120 Am. St. Rep. 982, Judge Rudkin, speaking for the court, said:

"We think that a liberal construction of the statute requires us to so hold, and that any other construction would in a measure defeat the beneficent purpose the Legislature had in view."

In North Pacific Loan & Trust Co. v. Bennett, 49 Wash. 34, 94 Pac. 664, the court said:

"Appellant's third contention calls for a strict consntruction of the law, whereas courts have almost universally given a liberal construction to statutes of this character. In view of their benevolent purpose, it is highly appropriate that they should be liberally construed."

And in State ex rel. McKee v. McNeill, 58 Wash. 47, 107 Pac. 1028, 137 Am. St. Rep. 1038, Judge Parker said:

"We do not think that the spirit of our exemption laws contemplates such a strict construction as counsel seeks to apply to this provision. * * * Following the general rule, this court has liberally construed our exemptions in favor of the poor debtor."

Circuit Judge Ross, for the court, in Re Gerber, supra, 186 Fed. 696, 108 C. C. A. 514, said:

"While it is well-established law that exemptions in behalf of unfortunate debtors are to be liberally construed in furtherance of the object of such statutes, it should never be forgotten that courts have not the power to legislate, and can no more add an exemption not fairly included within the statute than they can take one from the statute."

The issue in the case at bar I do not believe to have been determined by the decision of the state court in Re Creditors' Collection Agency, supra. In that case the matter in issue here was not in issue. While the discussion by the state court was general and was not in terms restricted to the question of whether money was intended to be considered as "other property," I am led to the conclusion, from the language employed, that it was not the intention of the court to include, within "the rule of ejusdem generis," cows with their calves and swine, etc., only, even though it applied the rule, but rather that the lieu selection must be made from the debtor's personal property enumerated in the exemption statute (section 563, supra), and that, since money was not named in the statute, it could not be considered as of the same kind or class and within the rule.

"The doctrine of ejusdem generis" is that "where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase is to be held to refer to things of the same kind." Spalding v. People, 172 Ill. 40, 49 N. E. 993.

"By application of the maxim 'ejusdem generis,' which is only a restriction of specific application of the broader maxim 'noscuntur a sociis,' general and specific words, which are capable of an analogous meaning being associated together, take color from each other, so that the general words are restricted

to a sense analogous to the less general (End. Interp. Stat. § 400); but it has never been supposed that the rule required the rejection of the general terms entirely, but only that they should be restricted to cases of the same kind as those expressly enumerated (State v. Williams, 2 Strob. [S. C.] 474). On the contrary, it must yield to another equally salutary rule of construction, viz., that every part of a statute should, if possible, be upheld and given its appropriate force." Misch v. Russell, 136 Ill. 22, 25, 26 N. E. 528, 529, 12 L. R. A. 125.

"The rule of ejusdem generis," in statutory construction, is by no "means a rule of universal application, and its use is to carry out, and not to defeat, the legislative intent. When it can be seen that the particular word by which the general word is followed was inserted, not to give a coloring to the general word, but for a distinct object, and when, to carry out the purpose of the statute, the general word ought to govern, it is a mistake to allow the ejusdem generis rule to pervert the construction." State v. Broderick, 7 Mo. App. 19, page 20.

[4, 5] Applying the well-known rules of statutory construction to this statute, first, that it shall be liberally construed (Washington court, supra); second, that words or phrases used are not to be taken separately, but considered in relation to the entire section under the general meaning applied to the main purpose; third, that, if the main purpose is to afford protection to the family, the application of the maxim "noscitur a sociis" must be understood to apply to any other property described or referred to in section 563, supra, and not restricted to subdivision 4, in the absence of express limitation. Applying this rule, upon a strict construction of the statute, would not include money, but would include, even under a strict construction, any other property possessed by the debtor and enumerated in this section.

The issue in Creditors' Collection Ass'n, supra, was whether money instead of animals could be selected. The state court said:

"To hold that money falls within the phrase 'other property' is to do violence to the rule of ejusdem generis."

And then refers to the cases herein cited, and holds that money cannot be selected in lieu of the animals named.

I have, through the courtesy of counsel, examined the briefs of appellants presented to the state court on appeal in Creditors' Collection Ass'n, supra, and the discussion in the briefs and the issue which was presented, approached from every viewpoint, is conclusive, to my mind, that the act of the Legislature of Washington, exempting current wages or salary to the amount of $100 for personal services rendered by any person having a family dependent upon him for support, from garnishment, except that, where the garnishment be founded upon a debt for actual necessaries furnished, the exemption shall not be in excess of $10 out of each week's wages for a longer period than four consecutive weeks, was conclusive of the issue presented, and that the discussion, with relation to subdivision 4, was incidental and pertained only to the relation it bore to the said act, except that under subdivision 4 money could not be selected in lieu of the animals named. Any other conclusion would be reading into the statute language which is not there, and would extend a broader scope and meaning to the expression of the court in saying that money does not fall within the phrase "other property," under the rule of ejusdem generis, and would

lead to harsh and illogical conclusions. If the debtor did not have two cows with their calves and five swine, he could not select two other cows with their caves and five other swine, nor could the ordinary man select $250 worth of fuel or provisions in addition to the six months' supply already provided for under this section. No such limitation was intended, nor did the state court so intend. Such limitation could only benefit the farmer. That is the only class who have such animals. It would deprive more than 60 per cent. of the householders of the state of this benefit of the act. I am satisfied that what the court said with relation to the lieu selections provided in subdivision 4, as applied to personal property in general other than money, is purely obiter dictum, and the court does not express an opinion of subdivision 4, as it relates to other property, except that money cannot be selected in lieu of the animals named, and that the act of 1907, supra, controls. The decision of the referee is therefore reversed, with directions that the lieu selections be set apart to the bankrupt.